UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

MICHAEL BROWN,

       Plaintiff,

v.                                        Case No. 04-3015

HELEN R. SAVKO et al.,

       Defendants.

## Order Granting Summary Judgment

The plaintiff alleges deliberate indifference to his serious medical needs during his incarceration in Western Illinois Correctional Center from May 2002 to March 2003. The defendants have moved for summary judgment. For the reasons below, the Court concludes that the plaintiff's evidence does not allow a reasonable inference that the defendants were deliberately indifferent to his medical needs. Summary judgment must therefore be granted to the defendants and this case closed.

## Summary Judgment Standard

A party moving for summary judgment must show, from the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, . . ." that there is no genuine issue of material fact and that the "moving party is entitled to judgment as a matter of law. *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001), *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986);Fed. R. Civ. P.56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Herman v. National Broadcasting Co., Inc.*, 744 F.2d 604, 607 (7th Cir. 1984), *cert. denied*, 470 U.S. 1028 (1985). This burden can be satisfied by "'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. If such a showing is made, the burden shifts to the non-movant to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Outlaw*, 259 F.3d at 837. A nonmoving party cannot rest on its pleadings, but must demonstrate that there is admissible evidence that will support its position. *Tolle v. Carroll Touch, Inc.,* 23 F.3d 174, 178 (7th Cir. 1994).

In determining whether factual issues exist, the court must view all the evidence in the light most favorable to the non-moving party. *Beraha v. Baxter Health Corp.*, 956 F.2d 1436, 1440 (7th Cir. 1992). However, Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

Undisputed Facts–Defendants Fuqua and Savko

For the most part, the plaintiff's response repeats his allegations. He does not go through each proposed undisputed fact. Accordingly, the Court adopts, essentially verbatim, the proposed facts that are material and supported by cites to the record. *See* Rule 56 Notice (d/e 61, "If you do not submit affidavits or other documentary evidence contradicting the defendants' assertions, the defendants' statement of facts will be accepted as true for purposes of summary judgment.").

    1. Plaintiff was incarcerated at Western Illinois Correctional Center from May 22, 2002 through March 14, 2003.

    2. On October 2, 2002, Defendant Savko taught Plaintiff in a basic education class.

    3. On October 2, 2002, Defendant Savko issued a Disciplinary Ticket and filed an Incident Report on Plaintiff because Plaintiff refused to comply with a direct order to follow Defendant Savko's directions to attend to his academic work.

    4. At the time Defendant Savko wrote the Disciplinary Ticket and Incident Report, Defendant Savko was not aware of any prior grievances filed by Plaintiff against Defendant Savko.

    5. Defendant Fuqua is the Health Care Unit Administrator at Western Illinois Correctional Center ("Western") and has held this position since May 22, 1989. Defendant Fuqua is a Registered Nurse.

    6. As a Health Care Unit Administrator, Defendant Fuqua's responsibilities are to direct, coordinate and review activities of the healthcare operations in conjuncture with the Medical Director. Because Defendant Fuqua is not a physician or dentist, final medical and dental treatment is with the designated physician and dentist. Defendant Fuqua does not have authority to order treatment for any inmate at any time.

    7. Defendant Fuqua has found the following from Plaintiff's medical chart:

    A. Offender Brown arrived at Western on May 22, 2002, and received routine screening by nursing staff.

    B. On May 28, 2002, Dr. Sims saw and treated Plaintiff for a complaint of gastrointestinal disorder.

    C. On June 1, 2002, Plaintiff was seen by a nurse for athlete's foot and a rash.

    D. On June 5, 2002, Plaintiff was seen by a nurse for copies of his medical chart and received same.

E. On June 12, 2002, Plaintiff was seen by a nurse for routine blood draw and an EKG.

F. On June 25, 2002, Plaintiff was seen by a nurse for a laceration to the right hand and was treated accordingly.

G. On July 30, 2002, Plaintiff was seen by a nurse for complaints of back pain and treated accordingly.

H. On August 22, 2002, Plaintiff was seen and treated by a nurse for stomach pain.

I. On August 29, 2002, Plaintiff was seen by the Optometrist for an eye exam.

J. On September 3, 2002, Plaintiff was seen by the Nurse Practitioner for complaints of low back pain, chest discomfort, pain in rib area, inflammation around heart, and problems with heart valve. Plaintiff was treated and referred to Doctor and Psychologist.

K. On September 5, 2002, Plaintiff was seen by Dr. Sims for gastrointestinal disorder and problems with heart valve. Plaintiff was treated accordingly.

L. On September 14, 2002, Plaintiff was seen by Dr. Patibandla, Psychiatrist, and treated accordingly.

M. On September 17, 2002, Plaintiff was seen by the Optometrist, who gave him new glasses.

N. On September 19, 2002, Plaintiff was seen by Dr. Sims for gastrointestinal disorder. Offender refused prescribed treatment and indicated the specific treatment he wanted.

O. On September 19, 2002, Plaintiff was seen by a Mental Health Professional. Plaintiff rejected training brochures to assist with sleep and relaxation.

P. On October 3, 2002, Plaintiff was a no show for his psych evaluation.

Q. On October 14, 2002, Plaintiff was seen by a nurse for food handler review.

R. On October 17, 2002, Plaintiff was seen by Medical Records for copies of his medical file.

S. On October 28, 2002, Plaintiff was seen by Medical Records for copies of his mental health records.

T. On November 12, 2002, Plaintiff was seen by a nurse, Medical Record copies issued.

U. On November 26, 2002, Plaintiff was seen by a nurse for a flu vaccine, and offender

refused.

   V. On January 2, 2003, Plaintiff was seen by a nurse for complaints of bad feet and white spots on tongue, and he was treated accordingly.

   W. On January 3, 2003, Plaintiff was seen by a nurse for chest pain. An EKG was done, and the doctor was notified.

   X. On January 6, 2003, Plaintiff was treated by Dr. Sims for complaints of chest pain.

   Y. On January 7, 2003, Plaintiff was seen by Dr. Stiles (Mental Health Professional) and referred to Psychiatrist for medical evaluation.

   Z. On January 10, 2003, Plaintiff was seen by the Nurse Practitioner for complaint of chest pain and lab work was ordered.

   AA. On January 13, 2003, Plaintiff was seen by a nurse and blood drawn.

   BB. On January 7, 2003, Plaintiff was seen by Medical Records for copies of medical records again.

   CC. On January 28, 2003, Plaintiff was seen by another Mental Health Professional and was referred to psychiatrist.

   DD. On February 17, 2003, Plaintiff was seen by Dr. Patibandla, Psychiatrist, for medical follow up.

   EE. On March 6, 2003, Plaintiff was seen by Medical Records for copies of dental records.

   FF. On March 13, 2002, Plaintiff was seen by nurse for pre-parole information.

   GG. On March 14, 2003, Plaintiff was seen by the nurse for pre-parole medication and 2-week prescription. Plaintiff paroled on March 14, 2003.

   8. Defendant Fuqua found the following from Plaintiff's dental chart:

   A. Plaintiff was seen by the Dentist on June 17, 2002, for sore gums and given proper treatment.

   B. Plaintiff was seen by the Dentist on July 11, 2002, and scheduled for extractions.

   C. Plaintiff was seen on July 18, 2002, by the Dentist for the extractions.

D. On August 30, 2002, Plaintiff was seen by a nurse and the Dentist and treated accordingly.

E. On September 27, 2002, Plaintiff was scheduled to be seen by the Dentist and refused.

F. On October 2, 2002, Plaintiff was seen by the Dentist for sore gums and treated accordingly.

G. On February 13, 2003, Plaintiff was seen by the Dental Hygienist for a cleaning.

9. Plaintiff's dental concerns of wanting partials and fillings are not priorities as determined by the dentist, Dr. Scholz.

10. Plaintiff wrote a Resident Request Slip to Defendant Fuqua on October 4, 2002 regarding treatment for Plaintiff's gum disease.

11. Defendant Fuqua reviewed Plaintiff's medical and dental records and responded to Plaintiff on October 8, 2002 with a memorandum.

12. During Plaintiff's incarceration at Western Illinois Correctional Center, Plaintiff received treatment that was medically indicated. Defendant Fuqua had no authority to override the decisions made by the medical or dental staff and was never aware of any refusal by the medical or dental staff to provide needed treatment to Plaintiff.

Undisputed Facts–Defendants Sims, Aschraft, Shaw & Mills

1. Plaintiff was offered penicillin on August 30, 2002, prior to receiving dental care.

2. The prescription for this medication was written by Dr. Grammar, the dentist providing care at that time.

3. This medication was offered to the Plaintiff, who refused it due to an allergy he is believed to have with respect to that medication.

4. Dr. Grammar substituted a prescription for Keflex in place of the penicillin-based drug.

5. Mr. Brown refused to take the Keflex on August 30, 2002.

6. As a result of his refusal to take this medication, his dental appointment was cancelled.

7. Dr. Sims diagnosed Plaintiff with reflux disease and dyspepsia. Sims avers that no special diets were available at Western, and that the plaintiff did not need a prescription for a special diet because he could avoid eating the foods that exacerbated his problem. (d/e 58, Sims

5

Aff.). The plaintiff says special diets were available, but he does not dispute that he could have avoided eating problem foods.

      8. With respect to Plaintiff's complaints of stomach problems, Dr. Sims prescribed Maalox for him, as well as Tagamet and Zantac at various times.

      9. No physician has ever indicated that this Plaintiff required a prescription for Prilosec or Prevacid while an inmate at any correctional facility. In response, Plaintiff submits a report dated after Plaintiff's release recommending Prilosec, but that does not show a prescription was active during his incarceration. He has no evidence to dispute Dr. Sims' affidavit that the medicine Sims prescribed for his reflux was inappropriate, much less deliberately indifferent.[1]

      10. No physician has indicated that Plaintiff suffers from any serious medical conditions relating to his heart. Dr. Sims had an EKG done which showed no abnormalities. (d/e 58, Sims Aff.). In response, Plaintiff submits a report of stress echocardiagram dated over a year after his release, but that does not establish a serious medical need during his incarceration. Additionally, the Court is not a doctor and not qualified to interpret the meaning of the document. The Court also notes that the report uses words such as "minimal impairment," no arrhythmias," "no ischemic EKG changes," "normal resting blood pressure," "no evidence of ischemia," and "resting wall motion abnormality . . . suggestive of previous cardiomyopathy which is non-ischemic." (d/e 64, p. 4). To a layperson at least, these terms do not suggest that the report diagnosed a serious medical need.

Undisputed Facts–Defendants Grammar

      1. Plaintiff was seen by Defendant Grammar in the Dental Unit on June 17, 2002, was examined and was placed on the waiting list for further treatment.

      2. Plaintiff was to be seen again in August 30, 2002, but he refused to take his premedication for the appointment and the appointment was canceled.

      3. Plaintiff requested dental treatment and was on the waiting list for treatment.

      4. Plaintiff was seen by two other dentists in the Dental unit. Neither dentist suggested that Plaintiff should be given treatment different from that provided by Defendant Grammar.

---

[1] The report also recommended that the plaintiff raise the head of his bead, decrease excess weight, not lie down for 3-4 hours after meals, and avoid fatty & fried foods and certain beverages. (d/e 64, p. 5). Another report submitted by the plaintiff states that he admitted to "excessive alcohol intake, marijuana, and cocaine." (d/e 64, p. 1). This simply illustrates the Court's inability, as a non-expert, to make its own determinations as to the cause of Plaintiff's reflux and its recommended treatment.

5. Plaintiff has been seen by other Dental treaters since his release and none of those treaters have advised Plaintiff that the treatment he received while incarcerated at Western Illinois Correctional Center was insufficient.

6. Defendant Grammar does not determine the priority for various dental treatment for prisoners on the treatment waiting list.

7. On those occasions Plaintiff was seen by Defendant Grammar, he was given the appropriate dental treatment required.

8. At no time did Defendant Grammar's treatment of Plaintiff deviate from the accepted standard of care.

9. Defendant Grammar does not schedule appointments for dental treatment for prisoners on the treatment waiting list.

10. Plaintiff claims, although has not produced any records to document, that he was seen by Defendant Grammar in January 2003. At that time, he was given a prescription to address his mouth odor.

11. Defendant Fuqua found the following from Plaintiff's dental chart:

A. Plaintiff was seen by the Dentist on June 17, 2002, for sore gums and given proper treatment.

B. Plaintiff was seen by the Dentist on July 11, 2002, and scheduled for extractions.

C. Plaintiff was seen on July 18, 2002, by the Dentist for the extractions.

D. On August 30, 2002, Plaintiff was seen by a nurse and the Dentist and treated accordingly.

E. On September 27, 2002, Plaintiff was scheduled to be seen by the Dentist and refused.

F. On October 2, 2002, Plaintiff was seen by the Dentist for sore gums and treated accordingly.

G. On February 13, 2003, Plaintiff was seen by the Dental Hygienist for a cleaning.

12. Plaintiff's dental concerns of wanting partials and fillings are not priorities as determined by the dentist, Dr. Scholz.

13. Plaintiff wrote a Resident Request Slip to Defendant Fuqua on October 4, 2002 regarding treatment for Plaintiff's gum disease. Defendant Fuqua reviewed Plaintiff's medical

and dental records and responded to Plaintiff on October 8,2002 with a memorandum.

*Analysis*

Drawing reasonable inferences in his favor, the plaintiff's submissions show that the only serious medical condition from which he suffered was reflux disease. His documents show that he has suffered from this since 1999, throughout his incarceration, and for at least two years after his release, despite treatment efforts by doctors outside the prison after his release. (D/e 64, p. 7 (operative procedure report dated 6/28/05; "indications: reflux symptoms despite therapy.")(Perhaps his condition persists today, the record does not show). The plaintiff has no evidence that any of the defendants were deliberately indifferent to that condition. He maintains that they should have heeded his requests to obtain his hospital records, but he does not show how those records would have or should have made any difference in his medical treatment. The record shows extensive medical appointments and treatment throughout the plaintiff's incarceration. The court understands that the plaintiff's stomach problems continued despite the treatment, but that creates no reasonable inference of deliberate indifference on the present record. There is simply no evidence to show his medical treatment in the prison was inappropriate, much less deliberately indifferent.

The plaintiff mentions nothing in his response about his dental problems or defendant Savko's retaliation. The court therefore deems those claims abandoned. In any event, the court sees no evidence to support those claims on the present record.

IT IS THEREFORE ORDERED that the defendants' motions for summary judgment are granted (d/e's 44, 51, 58). The clerk is directed to enter judgment in favor of all the defendants. All pending motions are denied as moot and this case is closed, parties to bear their own costs.

Entered this 10th Day of February, 2006.

                                            **s\Harold A. Baker**

                                        HAROLD A. BAKER
                                    UNITED STATES DISTRICT JUDGE